UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT GERING,

       Plaintiff,

v.                     Case No: 2:16-cv-267-FtM-99MRM

GEO GROUP INC., MIKE
CARROLL, GEORGE ZOLEY,
KRISTIN KANNER, DONALD
SAWYER, REBBECA JACKSON,
CHRIS CATRON, WILLIAM PRICE,
and BRIAN MASONY,

       Defendants.

_____

## ORDER OF DISMISSAL

This matter comes before the Court upon a 42 U.S.C. § 1983 complaint filed by Plaintiff Robert Gering ("Plaintiff"), challenging the constitutionality of Florida's civil commitment statutes for sexually violent predators (Doc. 1, filed April 8, 2016). Plaintiff, proceeding *pro se*, is a civil detainee at the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida.[1]

---

[1] Florida's Involuntary Civil Commitment for Sexually Violent Predators Act was enacted in Florida "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Fla. Stat. § 394.910, et seq. A person who is found, after a hearing, to be a "sexually violent predator" is "committed to the custody of the Department of Children and Family Services for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id. at § 394.917.

Because Plaintiff was granted leave to proceed in forma pauperis (Doc. 8), the Court must review his complaint to determine whether it is frivolous, malicious, or fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Upon review, the Court concludes that Plaintiff fails to present an actionable claim and that dismissal of this case is required.

## I.   Background and Complaint

On January 14, 2016, eighteen residents and former residents of the FCCC filed a putative class action complaint in Case No. 2:16-cv-35-FtM-99MRM, challenging the constitutionality of the Florida statutes governing the civil commitment of sexually violent predators and raising a litany of additional individual-specific claims regarding the residents' treatment at the FCCC. This Court denied class certification and dismissed the action without prejudice for failure to state a claim upon which relief could be granted. See Case No. 2:16-cv-35-FtM-99MRM at docket entry 2. However, each individual plaintiff was permitted to file his own separate amended complaint. Id.

Plaintiff filed the instant action on April 8, 2016 (Doc. 1). Although Plaintiff was not one of the original plaintiffs in case number 2:16-cv-35-FtM-99MRM, he appears to have cut and pasted portions of the complaint filed in that case, along with verbiage taken directly from a June 15, 2015 order issued by the United

States District Court of the District of Minnesota. See Karsjens v. Jesson, 109 F. Supp. 3d 1139 (D. Minn. 2015) (finding portions of the Minnesota statutes governing civil commitment and treatment of sex offenders to be unconstitutional on their face and as applied), reversed and remanded by Karsjens v. Piper, 845 F.3d 394 (8th Cir. 2017) (Karsjens II) (reversing the district court's finding that the Minnesota SVP statutes were unconstitutional).

Plaintiff's complaint is difficult to understand. He generally alleges that the Florida statutes governing the civil commitment of sexually violent predators ("Florida SVP statutes") are unconstitutional and suggests ways to make them better. Plaintiff also avers that the named defendants are liable in their individual capacities for adhering to the unconstitutional statutes. Plaintiff claims that mental health treatment at the FCCC is ineffective and that he and other detainees have stopped participating in treatment "because they know [it is] futile and they would never be released because of treatment." (Doc. 1 at 12).

Plaintiff also claims that the GEO Group, Inc., the company that operates the FCCC, is operated as a real estate investment trust, and as a result, is required to return ninety percent of its profits back to its investors (Doc. 1 at 13). He argues that $198 million dollars was returned to investors last year instead of being used to operate the FCCC.

Many of Plaintiff's allegations appear to actually be directed towards the Minnesota SVP statutes at issue in Karsjens— not the Florida SVP statutes.   In fact, Plaintiff paraphrases entire sections of the Minnesota district court's conclusions in Karsjens and raises each of the Karsjens court's stated conclusions as a claim in the instant case, notwithstanding that the Minnesota statutes at issue are dissimilar to the Florida SVP statutes (Doc. 1 at 15-17); Karsjens, 109 F. Supp. 3d at 1173-74.

To wit, Plaintiff alleges that the Florida SVP statutes are facially unconstitutional because: (1) they "indisputably [fail] to require periodic risk assessments" of the detainees; (2) they fail to provide a "judicial bypass mechanism" to challenge his ongoing commitment; (3) "the statutory discharge criteria is more stringent than the statutory commitment criteria"; (4) they authorize "the burden to petition for a reduction in custody to impermissibly shift from the State" to Plaintiff; (5) they require civilly committed individuals to show by clear and convincing evidence that a less restrictive alternative is appropriate "when the less restrictive alternatives are barely being used"; and (6) they do not require the defendants to take any affirmative action, such as petition for a reduction in custody when they no longer satisfy the criteria for continued commitment (Doc. 1 at 15-16).

Plaintiff also urges that the statutes are unconstitutional as applied because: (7) Defendants Kanner, Zoley, Carroll, Sawyer,

and Jackson do not conduct periodic risk assessments of civilly committed people at the FCCC; (8) the risk assessments that have been performed since the opening of the FCCC have not all been done in a constitutional manner; (9) Plaintiff has remained confined at the FCCC even though he has completed treatment or sufficiently reduced his risk of reoffending; (10) discharge procedures are not working properly at FCCC; (11) although the Florida SVP statutes expressly allow the referral of committed individuals to less restrictive alternatives, this is not occurring in practice; (12) although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention; (13) his due process rights were violated when the trial court at his commitment trial sent his jury home without allowing them to deliberate; (14) Plaintiff's Equal Protection rights were violated "because his liberty has been infringed upon as a result of Fla. Stat. § 394 Part V being unconstitutional on its face because the defendants use "the statute to punishing and/or detain 'Male' sex offenders after completion of their prison sentence and not applying [sic] the same standard to 'Female' sex offenders for their past and present sexual violent offenses"; and (15) the defendants have violated Plaintiff's rights to access the courts

by refusing to supply him with postage stamps for mailing legal materials to court. (Doc. 1 at 16-17).

As relief, Plaintiff requests that "substantial changes be made to Florida's sex offender civil commitment scheme," and asks the Court to dismantle the GEO Group's real estate investment trust (Doc. 1 at 17-18).  He also seeks two million dollars in damages. Id. at 21.

## II.  **Legal Standards**

A federal district court is required to review a civil complaint filed *in forma pauperis* and to dismiss any such complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e).  The mandatory language of 28 U.S.C. § 1915 applies to all proceedings *in forma pauperis*. Specifically, the section provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> (A)  the allegation of poverty is  untrue; or
>
> (B)  the action or appeal-
>
> > (i)  is frivolous or malicious;
> >
> > (ii) fails to state a claim on which relief may be granted; or
> >
> > (iii)seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

A complaint may be dismissed as frivolous under § 1915(e)(2)(B)(i) where it lacks an arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a right that clearly does not exist. Id. at 327.  In addition, where an affirmative defense would defeat a claim, it may be dismissed as frivolous. Clark v. Georgia Pardons & Paroles Bd., 915 F.2d 636, 640 n.2 (11th Cir. 1990).

The phrase "fails to state a claim upon which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6). See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6), and we will apply Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii)."). That is, although a complaint need not provide detailed factual allegations, there "must be enough to raise a right to relief above the speculative level", and the complaint must contain enough facts to state a claim that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  In making the above determinations, all factual allegations in the complaint must be viewed as true. Brown v. Johnson, 387 F.3d 1344, 47 (11th Cir. 2004).  Moreover, the Court must read the plaintiff's *pro se*

allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972).

Despite Plaintiff's non-prisoner status, his amended complaint is subject to initial review under 28 U.S.C. § 1915(e)(2)(B). See Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002) (recognizing that the district court did not err when it dismissed a complaint filed by a civil detainee for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (determining that § 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*).

### III. Analysis

In order to state a claim under § 1983, a plaintiff must show "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005). Section 1983 does not permit recovery under a theory of respondeat superior or vicarious liability. Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). Therefore, a defendant may be held liable under § 1983 only if he personally was responsible for the constitutional violation. Id. (explaining that a supervisor is liable under § 1983 only if he actively participated in the constitutional violation, or if there was a causal connection between his conduct and the alleged constitutional violation).

**a. Any claims based upon the fact that the FCCC is run by a private company are dismissed for failure to state a claim upon which relief may be granted**

Plaintiff asserts that:

> The GEO GROUP, INC. does not, nor does any of its subsidiaries, make or manufacture a product.  Nor do they provide a service other than the warehousing of human beings for various government agencies in the State of Florida and elsewhere.  Meaning, the taxpayer money that the State of Florida pays GEO to warehouse, feed, clothe, provide adequate medical care and mental health services, as well as provide meaningful rehabilitation, education and vocational programs; $198 million dollars of that money is being skimmed to pay shareholders in its Real Estate Investment Trust scheme.  The human beings under the care of the GEO GROUP INC., have effectively become a commodity to be bought, sold, and traded for profit.  It is in GEO GROUP's compelling interest to keep the beds full at FCCC for the enrichment of a few, at the cost of misery to so many others.  GEO's REIT scheme skirts the fringes of human trafficking.

(Doc. 1 at 14).  Plaintiff's argument that his commitment to the FCCC is unconstitutional merely because the facility is privately operated by a for-profit real estate investment trust does not state a 42 U.S.C. § 1983 claim.

Plaintiff has not demonstrated a legally protected interest in having the FCCC run by the state instead of a private company.  Indeed, in the prison context, it is well-settled that he does not have such interest.  See Pischke v. Litscher, 178 F.3d 497, 500 (7th Cir. 1999) ("Nor are we pointed to or can think of any other

- 9 -

provision of the Constitution that might be violated by the decision of a state to confine a convicted prisoner in a prison owned by a private firm rather than by a government."); <u>Rael v. Williams</u>, 223 F.3d 1153 (10th Cir. 2000) (that an inmate must reside in a private prison does not raise a federal constitutional claim); <u>Patscheck v. Snedeker</u>, 135 F. App'x 188, 190 (10th Cir. 2005) ("A prisoner has a legally protected interest in the conduct of his keeper, but not in the keeper's identity.").

Plaintiff's claims based upon the for-profit nature of GEO Group, Inc. are dismissed for failure to state a claim upon which relief may be granted.

> **b.    Claims of constitutional error during Plaintiff's civil commitment trial should be raised in a petition for writ of habeas corpus**

As to Plaintiff's allegation that constitutional errors were committed by the trial judge at his civil commitment trial when the judge issued a directed verdict instead of allowing a jury to consider his case (Doc. 1 at 6), Plaintiff does not explain how any of the named defendants were responsible.  Accordingly, the claim is dismissed for failure to state a claim upon which relief can be granted.

 Moreover, this claim does not address the conditions of Plaintiff's confinement; rather, it attacks the fact of confinement and should be raised in a habeas corpus action, after

Plaintiff exhausts his state court remedies.[2] See Duncan v. Walker, 533 U.S. 167, 176 (2001) (explaining that "federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment."); Preiser v. Rodriguez, 411 U.S. 475, 490 (1973) ("congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.").

> **c.   Plaintiff's claims regarding the constitutional infirmity of the Florida SVP statutes are dismissed for failure to state a claim on which relief can be granted**

The gravamen of Plaintiff's complaint, as well as several other similar complaints filed in this district by other residents of the FCCC, is that the Florida SVP statutes are constitutionally infirm. See, e.g., MDFL Case Nos. 2:16-cv-73-JES-MRM, 2:16-cv-75-SPC-CM, 2:16-cv-267-UA-MRM, 2:16-cv-59-UA-MRM, 2:16-cv-62-JES-MRM, 2:16-cv-72-UA-CM, and 2:16-cv-74-SPC-CM.

Plaintiff does not direct this court to any specific portion of the Florida SVP statutes he believes to be unconstitutional. Instead, each time he refers to the statutes, he cites to Florida Statutes §§ 394-910-394.931, which encompass all of Part V of The Mental Health Chapter of the Florida Statutes addressing

---

[2] If Plaintiff believes a state judgment is invalid, he may appeal to the state appellate court. See Fla. Stat. § 394.917(1) ("The determination that a person is a sexually violent predator may be appealed."); Fla. Rule. App. P. 9.030(b)(1)(A).

"Involuntary Civil Commitment of Sexually Violent Predators." Plaintiff's failure to specifically identify the portions of the Florida SVP statutes alleged to be unconstitutional hinders this Court in evaluating his amended complaint.

Most of Plaintiff's allegations appear to be based upon the Karsjens district court's findings that portions of the Minnesota SVP statues are facially unconstitutional. Plaintiff seems to believe that the Florida SVP statutes are either identical to, or similar enough to, the Minnesota SVP statutes that the Minnesota district court's analysis applies equally to the Florida SVP statutes.  This assumption is incorrect.  Moreover, the Karsjens district court was recently reversed by the Eighth Circuit Court of Appeals with a finding that the Minnesota SVP statutes are not unconstitutional. Karsjens II, 845 F.3d at 411.

Without commenting on the Minnesota district court's or the Eighth Circuit Court of Appeal's conclusions regarding the Minnesota SVP statutes, the Court will briefly address Plaintiff's allegations regarding the allegedly flawed Florida SVP statutes.

> **1.    The Florida SVP statutes require periodic assessments of a civil detainee's mental condition and provide for judicial review of the assessments at the detainee's request**

Plaintiff urges that the Florida SVP statutes are unconstitutional because they do not require periodic risk assessments of a civil detainee's mental condition (Doc. 1 at 15).

Also, presumably relying on Karsjens, Plaintiff urges that the Florida SVP statutes "contain[] no judicial bypass mechanism and, as such, there is no way for Plaintiff, *Robert Gering*, to timely and reasonably access the judicial process outside of the statutory discharge process to challenge his ongoing commitment." Id.  These statements are incorrect.

Unlike the Minnesota SVP statutes at issue in Karsjens, the Florida SVP statutes provide for periodic assessments of a civil detainee's mental condition and for judicial review at the civil detainee's request at any time after commitment.  Specifically, Florida Statute § 394.918 provides:

> **A person committed under this part shall have an examination of his or her mental condition once every year or more frequently at the court's discretion.** The person may retain or, if the person is indigent and so requests, the court may appoint, a qualified professional to examine the person. Such a professional shall have access to all records concerning the person. The results of the examination shall be provided to the court that committed the person under this part. Upon receipt of the report, the court shall conduct a review of the person's status.
>
> The department shall provide the person with annual written notice of the person's right to petition the court for release over the objection of the director of the facility where the person is housed. The notice must contain a waiver of rights. The director of the facility shall forward the notice and waiver form to the court.
>
> The court shall hold a limited hearing to determine whether there is probable cause to

> believe that the person's condition has so
> changed that it is safe for the person to be
> at large and that the person will not engage
> in acts of sexual violence if discharged. The
> person has the right to be represented by
> counsel at the probable cause hearing and the
> right to be present. Both the petitioner and
> the respondent may present evidence that the
> court may weigh and consider. If the court
> determines that there is probable cause to
> believe it is safe to release the person, the
> court shall set a trial before the court on
> the issue.
>
> At the trial before the court, the person is
> entitled to be present and is entitled to the
> benefit of all constitutional protections
> afforded the person at the initial trial,
> except for the right to a jury. The state
> attorney shall represent the state and has the
> right to have the person examined by
> professionals chosen by the state. At the
> hearing, the state bears the burden of
> proving, by clear and convincing evidence,
> that the person's mental condition remains
> such that it is not safe for the person to be
> at large and that, if released, the person is
> likely to engage in acts of sexual violence.

Fla. Stat. §§ 394.918(1)-(4) (emphases added).  The Florida SVP

statutes further provide:

> **A person is not prohibited from filing a
> petition for discharge at any time after
> commitment under this part.** However, if the
> person has previously filed such a petition
> without the approval of the secretary or the
> secretary's designee and the court determined
> that the petition was without merit, a
> subsequent petition shall be denied unless the
> petition contains facts upon which a court
> could find that the person's condition has so
> changed that a probable cause hearing is
> warranted.

Fla. Stat. § 394.920 (emphasis added).  Accordingly, unlike the Minnesota statutes at issue in Karsjens, the Florida SVP statutes provide for both mandatory periodic reviews of a civil detainee's mental condition and allow for more frequent reviews at the court's discretion.  Id.  The Florida SVP statutes also allow a detainee to petition the court for release over the objection of the facility's director and at any time thereafter.  Id.

Therefore, the Florida statutes do not suffer from the same defects as the Minnesota statutes at issue in Karsjens and any claims based upon allegations that the Florida SVP statutes are unconstitutional because they do not provide for period assessments of a detainee's mental condition or a "judicial by-pass mechanism" are due to be dismissed for failure to state a claim upon which relief may be granted.  Likewise, any as-applied claims against individual defendants based upon their adherence to Florida Statute § 394.920 are also dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2).

## 2. The statutory discharge criteria under the Florida SVP statutes comport with due process

Plaintiff asserts that the Florida SVP statutes are unconstitutional because the statutory discharge criteria for a civilly committed person are more stringent than the statutory commitment criteria (Doc. 1 at 16).  Again, the statement is

simply untrue and appears to be taken (albeit incompletely) from Karsjens. See Karsjens, 109 F. Supp.3d at 1169.[3]

Under the Florida SVP statutes, a person is subject to civil commitment as a sexually violent predator if a court or a unanimous jury finds, by clear and convincing evidence, that the person is a sexually violent predator. Fla. Stat. § 394.917.  A "sexually violent predator" is any person who has been convicted of a sexually violent offense as defined by Florida Statute § 394.912(9) and "[s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Fla. Stat. § 394.912(10).  After commitment, the civil detainee is entitled to a release trial when there is probable cause to believe that his condition is "so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged." Fla. Stat. § 394.918(3).  The State then bears the burden at trial of proving by clear and convincing evidence, "that the person's mental condition remains such that it is not safe for the person to be at large *and* that, if released, the person is likely to engage in

---

[3] The Karsjens court concluded that the Minnesota SVP statutes were unconstitutional because the statutes "render[] discharge from the MSOP more onerous than admission to it[.]"  Karsjens, 109 F. Supp. 3d at 1169.

acts of sexual violence." Fla. Stat. § 394.918(4) (emphasis added). These criteria are constitutionally sound.

The United States Supreme Court has clarified that the purpose of civil commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness." Jones v. United States, 463 U.S. 354, 368 (1983).   A state may confine a mentally ill person if it shows that the individual is both mentally ill *and* dangerous. Foucha v. Louisiana, 504 U.S. 71, 80 (1992).   Accordingly, it is axiomatic that a civilly committed person is entitled to release when he has recovered his sanity or is no longer dangerous. O'Conner v. Donaldson, 422 U.S. 563, 575 (1975) (noting that an involuntary commitment cannot constitutionally continue after the basis for it no longer exists). Unlike the Minnesota SVP statutes at issue in Karsjens,[4] the Florida SVP statutes require the state to prove that a civil detainee is both still mentally ill and poses a danger to society if released; otherwise, the detainee is entitled to release. Fla. Stat. § 394.918(4).   Accordingly, the Florida SVP statutes comport

---

[4] Notably, under the Minnesota statute, a person who is no longer mentally ill, but still a danger to the public could not be released. See Minn. Stat. § 253D.31.   This appears to run afoul of the Supreme Court's statements in Foucha and Hendricks. See Foucha, 504 U.S. at 80 and Hendricks, 521 U.S. at 358 (both holding that proof of dangerousness must be coupled with a finding of mental illness to justify continued civil detention); compare Karsjens II, 845 F.3d at 411 (finding no constitutional infirmity in the Minnesota SVP statute).

with the due process as it relates to release criteria. <u>See</u> <u>Kansas</u> <u>v. Hendricks</u>, 521 U.S. 346, 358 (1997) ("We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor such as mental illness or mental abnormality") (internal quotations omitted).

Any claims predicated upon the alleged facial unconstitutionality of the Florida SVP statutes as they relate to release criteria are dismissed for failure to state a claim upon which relief may be granted.  Likewise, the as-applied claims against the individual defendants based upon their adherence to the Florida SVP statutes as they relate to release criteria are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2).

> **3.    The Florida SVP statutes do not impermissibly shift the burden of proof to the detainee to prove that he is entitled to release**

Plaintiff argues that the Florida SVP statutes are not narrowly tailored because the statute impermissibly places the burden on committed individuals to demonstrate that they should be placed in a less restrictive setting (Doc. 1 at 16).[5]  Under the Minnesota SVP statutes, "[t]he petitioning party seeking discharge

---

[5]    The Florida SVP statutes do not contemplate any less restrictive settings than commitment to the FCCC for people who are deemed to be sexually violent predators.  Thus, Plaintiff makes the illogical assertion that a non-existent portion of the Florida SVP statutes is unconstitutional.

or provisional discharge bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Minn. Stat. § 253.28, subd. 2(d).  In Karsjens, the court found this provision to be unconstitutional because "the burden of demonstrating the justification for continued confinement by clear and convincing evidence should remain on the state at all times." 109 F. Supp. 3d at 1169.

To the extent Plaintiff asserts that the Florida SVP statutes also place the burden on the detainee to show his entitlement to release, he is wrong.  Under the Florida SVP statutes, "the **state** bears the burden of proving, by clear and convincing evidence, that the [detainee's] mental condition remains such that it is not safe for the person to be at large and that, if released, the person is likely to engage in acts of sexual violence." Fla. Stat. § 394.918(4) (emphasis added).

Accordingly, any claims challenging the facial constitutionality of the Florida SVP statutes as they relate to the detainees' burden of proof are dismissed for failure to state a claim upon which relief may be granted.  Likewise, the as-applied claims against the individual defendants based upon their adherence to the Florida SVP statutes as they relate to a detainee's burden of proof are dismissed for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2).

> **4.  The Florida SVP statutes require the Secretary of the Department of Children and Families, or the Secretary's designee, to authorize a detainee to petition the court for release if it is determined that the person is not likely to commit acts of sexual violence if discharged**

Plaintiff asserts that the Florida SVP statutes "do[] not require the Defendants to take affirmative action, such as petition for a reduction in custody on behalf of individuals who no longer satisfy the criteria for continued commitment." (Doc. 1 at 16). This claim appears to be predicated on Karsjens, which determined that the Minnesota SVP statutes' "failure to require the state to petition for reduction of custody, on behalf of individuals who no longer satisfy the criteria for continued commitment" was a "fatal flaw" rendering the statutes unconstitutional. 109 F. Supp. 3d at 1169-70.

However, in contrast to the Minnesota SVP statutes, the Florida SVP statutes provide that:

> If the secretary or the secretary's designee at any time determines that the person is not likely to commit acts of sexual violence if discharged, the secretary or the secretary's designee **shall authorize** the person to petition the court for release. The petition shall be served upon the court and the state attorney. The court, upon receipt of such a petition, shall order a trial before the court within 30 days, unless continued for good cause.

Fla. Stat. § 394.919(1) (emphasis added).  By its clear terms, § 394.919(1) requires the state to take affirmative action, in the

form of authorizing the detainee to petition the court for release, if it is determined that a detainee may be entitled to release. Therefore, the Florida SVP statutes do not suffer from the same alleged defect at issue in Karsjens.

Accordingly, any claim challenging the facial constitutionality of the Florida SVP statutes as they relate to the defendants' requirement to take affirmative action on behalf of individuals who no longer satisfy the criteria for continued commitment are dismissed for failure to state a claim upon which relief may be granted.   28 U.S.C. § 1915(e)(2).

### 5.   Plaintiff has not stated an Equal Protection claim

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."   The Supreme Court has expressed that there is "a strong presumption that gender classifications are invalid" under the Equal Protection Clause. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 152 (1994). Plaintiff asserts that his Fourteenth Amendment equal protection rights have been violated by the defendants because:

> [H]is liberty has been implicated as a result of Fla. Stat. § 394 Part V. being unconstitutional on its face as the result of Defendants, Kristin Kanner, George Zoley, Mike Carroll, Dr. Donald Sawyer, and Dr. Rebecca Jackson, and State Attorney utilizing the statute to punishing and/or detain "Male" sex offenders after completion of their prison sentence and not applying the same standard to

> "Female" sex offender for their past and
> present sexual violent offenses.

(Doc. 1 at 17).  Accordingly, Plaintiff appears to allege that Florida's SVP statutes do not apply the same standards to female sex offenders who commit the same types of crimes as male sex offenders.  Id.

Plaintiff provides no factual assertions to support this conclusory claim, and his legal conclusion, in terms of the wording of the statute, is false.  Florida's SVP statutes do not target "men," but rather "sexually violent predators."  Fla. Stat. § 394.912(10).  Sexually violent predators are not a protected class under the Fourteenth Amendment's Equal Protection Clause.  When a statutory scheme does not specifically classify based on a suspect class (such as persons of a certain race, alienage, religion, gender, or national origin), "uneven effects upon" suspected classes "are ordinarily of no constitutional concern."  Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 272 (1979).  The Fourteenth Amendment "guarantees equal laws, not equal results."  Id. at 273.

Still, "when a neutral law has a disparate impact" on a suspect class "an unconstitutional purpose may still be at work," and the Court does not doubt that Florida's SVP statutes have almost exclusively affected men.  Feeney, 442 U.S. at 273.  However, in order to state a viable disparate impact claim, a

claimant must prove that the <u>intention</u> of the law was to discriminate against a suspect class. <u>M.L.B. v. S.L.J.</u>, 519 U.S. 102, 135 (1996).  If the impact of a law "could not be plausibly explained on a neutral ground, impact itself would signal that the real classification made by the law was in fact not neutral." <u>Feeney</u>, 442 U.S. at 275.

In this case, the legislature's intent in creating the Florida SVP statutes was to "create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Fla. Stat. § 394.910.  The Florida SVP statutes' primary purpose is to protect the public and treat sexually violent predators. <u>Id.</u> These purposes are entirely plausible and rationally related to a legitimate state interest.  Any assertion that Florida's SVP statutes target the male gender with respect to anything other than the proclivity of some males to be sexually violent predators is untenable.  If a woman is determined to be a sexually violent predator, the clear terms of the Florida SVP statutes would apply to her as well. <u>Id.</u>  To imply that the Florida Legislature passed the statutes in order to fulfill a discriminatory animus it harbors against men is speculative and implausible.  Furthermore, given the gender neutral language of the Florida SVP statutes, Plaintiff's complaint rests on a legal conclusion, i.e. the statutes (and defendants) "do not apply the same standard[s] to female sex offenders," but he provides no facts in support thereof.

Therefore, Plaintiff has not stated an equal protection claim, and his claim is dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2).

### 6.   Plaintiff has not stated a claim with regard to the FCCC's provision of postage

Plaintiff makes the conclusory assertion that "Defendants, Kristin Kanner, George Zoley, Mike Carroll, Dr. Donald Sawyer, and Dr. Rebecca Jackson, FCCC has [sic] violated Plaintiff, *Robert Gering's* indigent Residents/Detainee access to court by refusing to supply him with postage for the mailing of legal materials to court." (Doc. 1 at 17).

Interference with a detainee's access to the court constitutes a First Amendment violation. Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991).  The Supreme Court in Bounds made clear that institutions must ensure that inmates have "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. at 825. Additionally, the Supreme Court explained that a plaintiff who alleges a denial of access to court must show how the interference caused the plaintiff harm or prejudice with respect to the litigation. Lewis, 518 U.S. at 349-351. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some

theoretical sense." Id. at 351.   Indeed, "the injury requirement is not satisfied by just any type of frustrated legal claim." Id. at 354.   Specifically, a plaintiff must show that the denial of access to court prejudiced him in a criminal appeal, post-conviction matter, or in a civil rights action under 42 U.S.C. § 1983 "to vindicate 'basic constitutional rights.'" Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974)).

Plaintiff makes no factual allegations supporting an interference with an access to court claim.   Nor has he alleged facts explaining how any named defendant's interference with his access to the courts prejudiced him in any legal matter. Accordingly, any First Amendment access claim is dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2).

## IV.   Conclusion

Each of Plaintiff's claims is subject to dismissal under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

Accordingly, it is hereby **ORDERED:**

1.   All claims in the 42 U.S.C. § 1983 amended complaint filed by Robert Gering (Doc. 1) are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

2.   The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment accordingly.

3.    Any appeal taken from this Order will be deemed frivolous and not taken in good faith.

**DONE** and **ORDERED** in Fort Myers, Florida on this  __1st__  day of March, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Robert Gering
Counsel of Record